# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **WELLS FARGO BANK, N.A.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO. 14-cv-15 |
| **ATMORE-BREWTON-MARSHALL PROPERTIES, LLC** and **MICHAEL W. DENDY,** | ) |
| | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT REQUESTING APPOINTMENT OF RECEIVER AND OTHER LEGAL AND EQUITABLE RELIEF

**COMES NOW Wells Fargo Bank, N.A.**, a national banking association, successor-by-merger to Wachovia Bank, National Association ("<u>Plaintiff</u>"), and for its Complaint against defendants **Atmore-Brewton-Marshall Properties, LLC**, an Alabama limited liability company ("<u>ABM</u>"), and **Michael W. Dendy**, an individual ("<u>Dendy</u>," together with ABM, the "<u>Defendants</u>"), Plaintiff states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a national banking association organized under the laws of the United States, with its main office located in the State of South Dakota.

2. ABM is a limited liability company organized under the laws of the State of Alabama with its principal place of business located in Albertville, Marshall County, Alabama. The sole member of ABM listed in ABM's business records filed with the Alabama Secretary of State is Dendy.

3. Dendy is an adult citizen of the State of Alabama residing in Marshall County, Alabama.

4. The Property (defined below) which is the subject of this dispute is located in Escambia County and Marshall County, Alabama.

5. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

6. This Court has original jurisdiction of this case pursuant to 28 U.S.C. § 1332.

7. Defendants are subject to personal jurisdiction in this judicial district because, *inter alia*, they are domiciled in the State of Alabama and part of the Property which is the subject of this dispute is located in Escambia County, Alabama.

8. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a)(2), as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district, and part of the Property that is the subject of this action is situated in this judicial district.

## NATURE OF ACTION

9. Plaintiff's predecessor made a commercial loan to Defendants, which is secured by, among other things, a mortgage and assignment of rents on certain property owned by ABM located in Escambia County and Marshall County, Alabama. Defendants defaulted under the terms of the loan documents by, *inter alia*, failing to make principal payments owing under the loan documents, failing to maintain the Property (defined below) in good repair, failing to pay assessed *ad valorem* taxes, and failing to comply with certain financial and reporting covenants and obligations. Plaintiff files this complaint to enforce its rights and remedies under the governing loan documents, in order to recover the amounts owing under the loan documents, and to preserve and enhance the value of the property securing the loan. Plaintiff also seeks the appointment of a receiver for the property securing the loan.[1]

---

[1] Contemporaneously herewith, Plaintiff has filed its *Motion for the Appointment of a Receiver*, together with its supporting materials.

## FACTUAL ALLEGATIONS

A.     **Loan and Loan Documents.**

10.    Plaintiff made a commercial loan to Defendants jointly and severally (the "Loan"), as evidenced, *inter alia*, by (i) that certain Promissory Note dated January 29, 2009, made by Defendants payable to Plaintiff in the original principal amount of $5,234,238.11 (the "Note") (a true and correct copy of the Note is attached hereto as **Exhibit A** and incorporated herein by reference); and (ii) that certain Loan Agreement dated January 29, 2009 (the "Loan Agreement") (a true and correct copy of the Loan Agreement is attached hereto as **Exhibit B** and incorporated herein by reference), having been modified by those certain modification agreements between Defendants and Plaintiff from time to time (the "Modification Agreements") (true and correct copies of the Modification Agreements are attached hereto as **Exhibits C through F** and incorporated herein by reference).[2]

11.    In addition to Defendants' obligations to pay the principal of and interest on the Loan, the Note provides that the holder thereof is entitled to attorneys' fees and other collection costs incurred to enforce or collect any of the obligations under the Note or related loan documents.  *See* Ex. A, p.2–3 ("Attorneys' Fees and Other Collection Costs").

---

[2] Kathy Dendy was originally a co-borrower on the Note.  She was subsequently released from her obligations under the Loan Documents.

12. To secure the Loan, ABM granted to Plaintiff (a) that certain Mortgage and Assignment of Rents dated January 29, 2009, granted by ABM in favor of Plaintiff (the "<u>Mortgage</u>") (a true and correct copy of the Mortgage is attached hereto as **Exhibit G** and incorporated herein by reference), recorded in the Office of the Judge of Probate of Marshall County, Alabama in Mortgage Book 4624, Page 209, and in the Office of the Judge of Probate of Escambia County, Alabama in Mortgage Book 473, Page 635, and (b) that certain Lockbox Account Agreement dated March 20, 2009, between ABM and Plaintiff (the "<u>Lockbox Agreement</u>," together with the Note, the Loan Agreement, the Modification Agreements, the Mortgage, and any and all other documents or instruments further evidencing or securing the Loan, the "<u>Loan Documents</u>").  A true and correct copy of the Lockbox Agreement is attached hereto as **Exhibit H** and incorporated herein by reference.

13. The Mortgage encumbers certain real property owned by ABM located in Escambia County (the "<u>Escambia Properties</u>") and Marshall County (the "<u>Marshall Properties</u>"), Alabama, together with all improvements thereon and rents arising therefrom.  *See* Ex. G, p.1.  All real property encumbered by the Mortgage is collectively referred to herein as the "<u>Property</u>."  The Mortgage also assigns and transfers to Plaintiff all rents of the Property.  The Escambia Properties include retail centers located in Atmore, Alabama (the "<u>Atmore Property</u>") and in Brewton,

Alabama (the "<u>Brewton Property</u>").  The Marshall Properties include an apartment building in or around Albertville, Alabama, a single-tenant retail building in or around Guntersville, Alabama (the "Marshall Retail Building"), and an industrial property in or around Boaz, Alabama (the "Marshall Industrial Building").  *See* Ex. G, Ex. "A" thereto.

    14.    Pursuant to the Lockbox Agreement, Plaintiff established a unique U.S. Postal Service address (the "<u>Lockbox</u>") to be used for rents from the Property, which were then to be deposited into a deposit account ending in -3216 established and maintained by Plaintiff (the "<u>Deposit Account</u>").  *See* Ex. H, ¶ 2(a).  ABM is required under the Lockbox Agreement to send tenant direction letters to each tenant of the Property, directing such tenants to remit all rent payments required under the tenants' leases into the Lockbox.  *See id.* at ¶ 4(b). Also, pursuant to the Lockbox Agreement, ABM granted Plaintiff a security interest in (i) the Lockbox and related collateral, and (ii) the Deposit Account and all profits and proceeds thereof.  *See id.* at ¶¶ 2(c), 8.

**B.**     <u>**Default; Status of the Property**</u>**.**

    15.    Defendants are in default under the terms of the Loan Documents.

    16.    Defendants are obligated to make monthly payments of principal each month until the Loan is fully repaid.  *See* Ex. A, p.2 ("Repayment Terms); Ex. F. On October 15, 2013, a principal payment in the amount of $13,224.30 was due on

6

the Loan. Defendants failed to pay this amount upon the due date. On November 15, 2013, a principal payment in the amount of $12,540.53 was due on the Loan. Defendants failed to pay this amount upon the due date. On December 15, 2013, a principal payment in the amount of $13,226.20 was due on the Loan. Defendants failed to pay this amount upon the due date. Because of Defendants' failure to pay amounts owing under the Loan Documents, Defendants are in default under the Loan Documents.

17.   Defendants are obligated to maintain the Property in good condition and repair, and make all replacements, additions, and improvements as are necessary for the proper conduct of Defendants' business. *See* Ex. B, p.2–3 ("Affirmative Covenants – Maintain Properties"); Ex. G, p.4 ("Maintenance, Repairs and Alterations").

18.   Defendants have failed to maintain the Property in good condition and repair and are thus in default under the terms of the Loan Documents. Dendy informed Plaintiff that certain repairs were needed at the Escambia Properties, and, specifically, that Marvin's, Inc. ("Marvin's"), the Escambia Properties' anchor tenant, had elected to undertake these repairs itself and withhold rents due under its lease with ABM. Upon information and belief, since October 2013, Marvin's has been withholding $2,500 per month from its rent. To confirm the status of the Escambia Properties and the repairs needed, Plaintiff conducted due diligence with

regard to the Escambia Properties, as provided for in the Loan Documents. Through its due diligence, Plaintiff learned, among other things, that the asphalt pavement has areas of deterioration, that there are a significant number of roof leaks, and that, at the Brewton Property, the HVAC system, fire pump system, and fire pump utility building all need repairs.  The total cost of the repairs needed at the Escambia Properties exceeds $1,000,000.  Due to the scale of the repairs needed at the Escambia Properties, Plaintiff is also concerned about the condition of the Marshall Properties.

19. According to that certain letter dated November 20, 2013, sent by counsel for Marvin's to counsel for ABM (the "Fire System Letter") (a true and correct copy of the Fire System Letter is attached hereto as **Exhibit I** and incorporated herein by reference), the fire sprinkler system at the Brewton Property is in need of repair and currently does not conform to the applicable fire code.  If the Defendants do not make the necessary repairs to the Brewton Property, Marvin's plans to undertake these repairs itself and withhold the costs of the repairs, plus ten percent, out of the rents.

20. Additionally, Defendants are obligated to pay *ad valorem* taxes on the Property before the taxes become delinquent.  *See* Ex. B, p.3 ("Affirmative Covenants – Payment of Debts"); Ex. G, p.4 ("Impositions; Escrow Deposit"). Defendants failed to pay the 2011 and 2012 *ad valorem* taxes assessed on the

Atmore Property before they became delinquent, subjecting the Atmore Property to tax sales by Escambia County. Defendants also failed to pay the 2013 *ad valorem* taxes on the Atmore Property, the Brewton Property, the Marshall Retail Building, and the Marshall Industrial Building before those taxes became delinquent, subjecting those properties to tax sales if the taxes are not paid. As of January 13, 2014, ABM owes the following in taxes on the Property:

- On the Atmore Property: $37,096.91 for 2011 taxes; $33,025.33 for 2012 taxes; and $30,781.55 for 2013 taxes (for a total of $100,903.79);
- On the Brewton Property: $26,327.53;
- On the Marshall Retail Building: $3,461.22; and
- On the Marshall Industrial Building: $5,871.52.

The failure to pay these *ad valorem* taxes constitutes a default under the terms of the Loan Documents. *See* Ex. A, p.3 ("Default – Nonpayment; Nonperformance"); Ex. B, p.3 ("Affirmative Covenants – Payment of Debts"). Pursuant to the terms of the Modification Agreement dated March 1, 2013 (the "March 2013 Modification Agreement"), the Atmore Property had to be redeemed and all outstanding taxes had to be paid on or before December 31, 2013. *See* Ex. F, ¶ 3(d). Defendants have not redeemed the Atmore Property or paid all outstanding taxes. Therefore, Defendants are in default of the terms of the March 2013 Modification Agreement.

21. Furthermore, Defendants are subject to certain ongoing financial and reporting covenants and obligations with respect to the Loan and the Property,

including, but not limited to, providing Plaintiff annual financial statements, copies of filed tax returns, and rent rolls, and ensuring the deposit of rents in the Deposit Account. *See* Ex. A, p.3 ("Financial and Other Information"); Ex. B, p.3 ("Affirmative Covenants," "Personal Financial Statements," and "Property Reports"); Ex. H ¶ 4. Defendants are also obligated to provide Plaintiff fully executed copies of all leases currently in effect at the Property as well as copies of tenant direction letters for all current tenants. *See* Ex. H ¶ 4(c). Defendants have failed to comply with these covenants and obligations. This failure constitutes an event of default under the Loan Documents.

22.     Plaintiff has made efforts throughout the course of its relationship with Defendants to work with Defendants regarding the Loan Documents, as evidenced by the Modification Agreements which have extended the maturity date of the Note from March 15, 2012 to December 31, 2014. *See* Ex. A, p.2 ("Repayment Terms"); Ex. C, p.1; Ex. D ¶ 1; Ex. E, p.1; Ex. F ¶ 3(c). Since the spring of 2013, Plaintiff has asked Defendants to satisfy their reporting and other obligations under the Loan Documents. Despite multiple requests, Defendants have failed to respond. Additionally, upon information, Defendants retained Warren Averett, LLC ("Warren Averett") to assist with the provision of this information to Plaintiff, but Defendants also failed to provide the necessary information to Warren Averett.

23. Despite Plaintiff's efforts, Plaintiff has been unable to get into contact with Defendants for months at a time. Additionally, Plaintiff has primarily been able to communicate with Dendy only through text messages on a very limited basis, increasing the difficulty of contacting him to discuss the Property and the Loan Documents.

24. Due to Defendants' failure to comply with the terms of the Loan Documents, Plaintiff was forced to formally demand Defendants' compliance with the Loan Documents, as evidenced by that certain demand letter dated as of August 29, 2013 (the "August Demand Letter"). A true and correct copy of the August Demand Letter is attached hereto as **Exhibit J** and incorporated herein by reference.

25. When Defendants failed to provide the information requested in the August Demand Letter by September 13, 2013, Plaintiff notified Defendants of Plaintiff's election to accelerate the Loan and demanded immediate payment of all outstanding amounts due and owing under the Note, as evidenced by that certain demand letter dated as of September 18, 2013 (the "September Demand Letter"). A true and correct copy of the September Demand Letter is attached hereto as **Exhibit K** and incorporated herein by reference.

26. Despite the acceleration and Plaintiff's demand for payment, Defendants have failed and refused to pay all amounts due and owing under the

Loan Documents. Accordingly, the defaults existing under the Loan Documents are continuing and have not been cured.

27. One of the primary sources of repayment of the Loan is rental revenues from the tenants. Not all of the tenants have been paying their rents into the Lockbox. If Defendants have been receiving those rent payments directly, they have not been paying them to Plaintiff, as is evidenced by the Defendants' failure to make the last three principal payments owing under the Loan Documents. Additionally, Defendants are not maintaining the Property or paying assessed *ad valorem* taxes. Accordingly, Plaintiff has substantial concerns about Defendants' financial stability, and, correspondingly, their ability to repay the Loan, pay the *ad valorem* taxes and redeem the Atmore Property, manage any part of the Property, or undertake the necessary repairs at the Property.

28. Plaintiff also has concerns about the Defendants' retention of tenants at the Property. Not only is Plaintiff concerned that tenants will leave due to the maintenance issues, as discussed above, Plaintiff is also concerned that tenants will leave due to tenant relations issues. According to that certain letter dated November 20, 2013, sent by counsel for Marvin's to counsel for ABM (the "Parking Lot Letter") (a true and correct copy of the Parking Lot Letter is attached hereto as **Exhibit L** and incorporated herein by reference), ABM has proposed to construct or allow the construction of a new fast food establishment in the parking

lot area of the Brewton Property. Through the Parking Lot Letter, Marvin's notified ABM that Marvin's does not consent to the proposed construction and that Marvin's believes ABM will be in breach of the lease agreement between Marvin's and ABM if ABM proceeds with the construction without Marvin's consent. *See* Ex. L.

29. Post-default interest and fees have continued to accrue on the Loan. In light of this accruing interest, the obligations owing are increasing, while the value of the Property securing these obligations is potentially decreasing.

30. As of January 9, 2014, the total amount of debt outstanding under the Loan is $4,505,887.19, exclusive of attorneys' fees and costs, which includes $4,488,083.89 in principal, $17,141.99 in accrued and unpaid interest, and $661.31 in late fees. Interest, fees, and other costs of collection continue to accrue.

C. **Remedies Upon Default.**

31. As a result of the ongoing defaults under the Loan Documents, Plaintiff is entitled to exercise all rights and remedies under the Loan Documents.

32. With respect to Plaintiff's entitlement to collect rents and appoint a receiver upon a default, the Mortgage provides that "Bank may take immediate possession of the Property or any part thereof (which Mortgagor agrees to surrender to Bank) and manage, control or lease the same to such persons and at

such rental as it may deem proper and collect and apply Rents . . . ." *See* Ex. G, p.7 ("Remedies of Bank on Default"). Additionally, the Mortgage provides that:

> **Bank may apply to any court of competent jurisdiction for the appointment of a receiver for all purposes** including, without limitation, to manage and operate the Property or any part thereof, and to apply the Rents therefrom as hereinabove provided. **In the event of such application, Mortgagor consents to the appointment of a receiver, and agrees that a receiver may be appointed without notice to Mortgagor**, without regard to whether Mortgagor has committed waste or permitted deterioration of the Property, without regard to the adequacy of any security for the Obligations, and without regard to the solvency of Mortgagor or any other person, firm or corporation who or which may be liable for the payment of the Obligations.

*See id.*, p.7–8 ("Remedies of Bank on Default"). The Mortgage also provides that upon default, Plaintiff "may sell all or part of the property" as provided in the Mortgage. *See id.*, p.8 ("Remedies of Bank on Default").

33.   Further, the Note provides that upon a default, Plaintiff may "[e]xercise any rights and remedies as provided under the Note and other Loan Documents, or as provided by law or equity." *See* Ex. A, p.3 ("Remedies Upon Default – Cumulative").

34.   The Property and the rents arising therefrom are the collateral securing the Loan, and a receiver is needed to take immediate possession and control of such property in order to preserve, and to potentially enhance, its value for Plaintiff's benefit. The harm suffered by Plaintiff in the form of the compromise of its title to the Property as a result of the tax sales and the potential

loss of tenants and related rents as a result of poor maintenance will be irreparable, as, in light of Defendants' financial instability, Defendants are without sufficient funds to pay the amounts owing under the Loan. Consequently, Plaintiff is left with no adequate remedy at law for Defendants' defaults under the Loan Documents. Furthermore, absent the appointment of a receiver, the potential harm to Plaintiff and the Property outweighs any conceivable harm that Defendants might suffer as a result of such appointment, as Defendants contractually agreed to this remedy.

## COUNT I - BREACH OF CONTRACT

35. Plaintiff realleges and reincorporates all preceding paragraphs of this Complaint as if set forth fully herein.

36. Plaintiff, and/or its predecessors-in-interest, has complied with its contractual obligations by, among other things, extending the Loan to Defendants.

37. Defendants have defaulted on their obligations under the Loan Documents by, among other things, defaulting on the repayment of the amounts owing under the Loan Documents and defaulting under the terms of the covenants.

38. Accordingly, Defendants are in default of the terms of the Loan Documents, and are liable to Plaintiff for all amounts owing thereunder, plus attorneys' fees, costs, and accruing interest.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, for the principal indebtedness outstanding under the Loan, plus accrued and accruing interest, late charges, and expenses of collection, including attorneys' fees and costs, as well as such other, further, and different relief to which Plaintiff may be entitled and is just and proper in this action.

## COUNT II - APPOINTMENT OF RECEIVER

39. Plaintiff realleges and reincorporates all preceding paragraphs of this Complaint as if fully set forth herein.

40. Defendants are in default under the terms of the Loan Documents.

41. Pursuant to the Loan Documents, and in light of the ongoing defaults, Plaintiff is contractually entitled to the appointment of a receiver to take possession of the Property. Under the terms of the Loan Documents, Defendants consented to the appointment of a receiver of the Property, including the real property and all improvements thereon and rents arising therefrom. Also, under the terms of the Mortgage, upon Defendants' defaults, Plaintiff is entitled to take immediate possession of the Property or any part thereof and to sell the same.

42. Plaintiff is also equitably entitled to the appointment of a receiver over the Property in order to preserve its value. The Property is in need of maintenance, an anchor tenant at two of the properties has voiced its displeasure over the need for maintenance, the Defendants' failure to pay 2011 and 2012 *ad*

*valorem* taxes has resulted in tax sales of the Atmore Property, the Defendants' failure to pay 2013 *ad valorem* taxes will result in additional tax sales of the Property, and the Defendants have failed to communicate and cooperate with Plaintiff regarding their covenants and obligations under the Loan Documents. A receiver is due to be appointed over the Property to manage and operate it, in order to preserve the status of Plaintiff's collateral.

43. This Court has the authority to appoint a receiver over property located in different judicial districts pursuant to 28 U.S.C. § 754.

**WHEREFORE,** Plaintiff requests that this Court enter an order appointing Focus Management Group USA, Inc., by and through Keith G. Hyatt, as receiver of the Property, to take immediate possession and control of the Property pending a final resolution of this action, and for such other, further, and different relief as this Court deems just and proper under the circumstances.

Dated this the 14th day of January, 2014.

/s/ D. Christopher Carson
D. Christopher Carson (CARSD4255)
Hanna Lahr (LAHRH4828)

Attorneys for Plaintiff
WELLS FARGO BANK, N.A.

**OF COUNSEL:**
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000

Facsimile: (205) 458-5100
Email:     ccarson@burr.com
           hlahr@burr.com


**PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE, PLEASE SERVE THE FOLLOWING DEFENDANTS VIA CERTIFIED MAIL:**

Atmore-Brewton-Marshall Properties, LLC
c/o Michael W. Dendy, its registered agent
P.O. Box 1607
Albertville, Alabama 35950-0026

Michael W. Dendy
P.O. Box 1607
Albertville, Alabama 35950-0026