IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WELLS FARGO BANK, N.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 14-0015-WS-C |
| | ) |
| ATMORE-BREWTON-MARSHALL | ) |
| PROPERTIES, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on the Motion for the Appointment of a Receiver (doc. 3) filed by plaintiff, Wells Fargo Bank, N.A.

To afford defendants a reasonable opportunity to be heard, the undersigned entered an Order (doc. 9) on January 17, 2014, directing defendants "to file a response (supported by exhibits and legal authority, as appropriate) to the Motion for Appointment of a Receiver on or before **February 3, 2014**." (Doc. 9, at 5.) On January 31, 2014, defendant Michael W. Dendy, proceeding *pro se*, requested an enlargement of time to prepare a response, based on the recent crippling ice storm that struck southern Alabama, Dendy's travel schedule and his desire to retain counsel. (*See* doc. 15.) On February 3, 2014, the undersigned entered an Order (doc. 19) extending the time for defendants to respond to the Motion for Appointment of Receiver through and including February 11, 2014. One day before that deadline, Dendy filed a response stating that he "agree[s] to the Motion for Appointment of Receiver." (Doc. 21, at 1.)[1] Defendant

---

[1] Although this Court previously explained that Dendy cannot represent defendant Atmore-Brewton-Marshall Properties, LLC (of which he is a member) in this matter, Dendy's February 10 response purported to state that the LLC defendant likewise agrees to the Motion. By way of explanation, Dendy indicated that "we cannot afford legal representation on behalf of the LLC." (Doc. 21, at 1.) Be that as it may, the law remains clear that the LLC cannot proceed *pro se* and Dendy cannot represent it. *See, e.g., Udoinyion v. The Guardian Security*, 2011 WL 3911087, *3 (11th Cir. Sept. 7, 2011) ("A corporation is an artificial entity that cannot appear *pro se* and must be represented by counsel."). The LLC's financial status and ability to afford
(Continued)

Atmore-Brewton-Marshall Properties, LLC ("ABM") has not availed itself of this opportunity to be heard, despite actual notice of the Motion. Accordingly, the Court finds that Wells Fargo's Motion is unopposed.

Subject to the foregoing, the Court has considered the 160 pages of materials that Wells Fargo submitted in its Motion and accompanying exhibits, and makes the following determinations:

1. This Court has jurisdiction over the parties and venue is proper in this Court.

2. On January 14, 2014, plaintiff, Wells Fargo Bank, N.A. ("Wells Fargo"), filed a Complaint Requesting Appointment of Receiver and Other Legal and Equitable Relief (doc. 1) in this District Court against named defendants, Atmore-Brewton-Marshall Properties, LLC ("ABM") and Michael W. Dendy ("Dendy"). The Complaint alleges state-law causes of action for breach of contract and appointment of a receiver.

3. According to the well-pleaded allegations of the Complaint, on January 29, 2009, Wells Fargo's predecessor made a commercial loan (the "Loan") to defendants in the original principal amount of $5,234,238.11. As security for the Loan, ABM granted to Wells Fargo a mortgage and assignment of rents (the "Mortgage") encumbering certain real property owned by ABM and located in Escambia County, Alabama and Marshall County, Alabama, together with improvements thereon and rents arising therefrom (collectively, the "Property"). The Mortgage also assigns and transfers to Wells Fargo all rents of the Property. The Complaint identifies the Property as consisting of a retail center in Atmore, Alabama; a retail center in Brewton, Alabama; an apartment building in or around Albertville, Alabama; a single-tenant retail building in or around Guntersville, Alabama; and an industrial property in or around Boaz, Alabama.

---

retained counsel are irrelevant. *See generally Industrial Unlimited v. Viacom Entertainment Int'l, Inc.*, 2005 WL 1177931, *1 (D. Md. May 18, 2005) ("Without the ability to proceed *in forma pauperis*, an artificial entity such as Industrial Unlimited is not eligible for appointment of counsel."). The bottom line is this: If the LLC wishes to appear and defend against Wells Fargo's claims in this litigation, then it must make arrangements for counsel to represent it. If it does not do so, then Atmore-Brewton-Marshall Properties, LLC, will be subject to entry of default and default judgment upon proper service of process by plaintiff and the expiration of time for responsive pleadings. Accordingly, ***defendants are strongly encouraged to consult with counsel immediately to evaluate their options with respect to the LLC.***

4.      The Complaint alleges that, as additional security for the Loan, ABM and Wells Fargo entered into a Lockbox Account Agreement dated March 20, 2009, pursuant to which Wells Fargo established a unique postal address (the "Lockbox") to receive Property rents, which were then deposited in a Deposit Account established and maintained by Wells Fargo. According to the Complaint, ABM granted Wells Fargo a security interest in the Lockbox and related collateral, as well as in the Deposit Account and its profits and proceeds.

5.      The Complaint alleges that ABM and Dendy are in default on the Loan in multiple respects, including failure to make required monthly principal payments, failure to maintain the Property in good condition and repair, failure to pay *ad valorem* taxes on the Property that are due and owing, and failure to provide certain financial documents and records to Wells Fargo. On the basis of these and other purported forms of default, Wells Fargo accelerated the Loan and demanded immediate payment in full, which defendants have not done.

6.      According to the Complaint, as of January 9, 2014, the total principal amount outstanding under the Loan was $4,488,083.89, plus accrued interest, late fees, attorney's fees and costs.

7.      The Complaint alleges that, in light of defendants' default on the Loan, Wells Fargo is invoking its contractual right to appointment of a receiver. In particular, Wells Fargo relies on language in the "Remedies of Bank on Default" section of the Mortgage providing that Wells Fargo may apply to a court of competent jurisdiction for appointment of receiver and that ABM (as mortgagor) consents to appointment of a receiver without notice.

8.      Wells Fargo further invokes this Court's equitable power to appoint a receiver. *See, e.g., Gilchrist v. General Elec. Capital Corp.*, 262 F.3d 295, 302 (4th Cir. 2001) ("We begin our analysis by recognizing that the district court has within its equity power the authority to appoint receivers and to administer receiverships."); *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 241 (5th Cir. 1997) ("[T]he District Court had the power to appoint a receiver to take possession of the judgment debtor's property for preservation under Federal Rule of Civil Procedure 66."). The Court recognizes that "[r]eceivership is an extraordinary remedy that should be employed with the utmost caution and is justified only where there is a clear necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties." *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012) ("citations and internal quotation marks omitted). The

Court finds that Wells Fargo has made the requisite equitable showing here, given plaintiff's allegations that its collateral may be devalued by defendants' ongoing failure to maintain and repair the Property, failure to pay *ad valorem* taxes on the Property, and failure to take action to preserve tenants and cash flow from rent payments on the Property. Moreover, there is no indication of an undue burden on defendants, particularly given ABM's contractual assent to appointment of a receiver upon default, Dendy's express acquiescence to the Motion for Appointment of Receiver, and ABM's failure to appear to contest the Motion.

9. Plaintiff has made a substantial showing that Focus Management Group USA, Inc., by and through Keith G. Hyatt, has significant experience in the management of properties such as the Property, and that it is well suited to serve as receiver for the Property.

10. For purposes of the Motion for Appointment of a Receiver, defendants have objected to none of the facts and conclusions recited above.

Based upon the foregoing, the Motion for the Appointment of a Receiver (doc. 3) is **granted**. To effectuate such appointment, it is hereby **ORDERED** as follows:

A. Focus Management Group USA, Inc. ("Focus") is hereby **appointed** as Receiver for the Property, which includes all those certain tracts of land as described in Exhibit A to document 3-1 (the "Land"), all buildings, improvements, and fixtures on the Land, and all estates, rights, tenements, hereditaments, privileges, rents, issues, profits, easements, and appurtenances of any kind benefitting the Land, all means of access to and from the Land, all water and mineral rights, and all leases, rents, issues, and profits. Keith G. Hyatt shall serve as primary representative of the Receiver in this matter. The Receiver is authorized to take immediate possession and control of the Property (hereinafter referred to as the "Receivership Property") and associated assets;

B. Defendants must comply with this Order, and are hereby enjoined and restrained from impeding or interfering with the Receiver's exercise of its rights, powers and duties. From and after the entry of this Order, Defendants shall not enter into any lease, contract or agreement of any kind or character relating to these assets, and shall not grant any lien upon or security interest in the Receivership Property;

C. Defendants and their agents, employees and principals shall cooperate fully with the Receiver in the conduct of its duties, and shall promptly provide to the Receiver such information and access to people and records as the Receiver shall reasonably request;

D. Defendants are hereby ordered and directed to deliver to the Receiver unrestricted physical custody, control and possession of the Receivership Property; and all rents, revenues and proceeds of the Receivership Property, any and all proceeds from insurance claims related to the Receivership Property, and all surety bonds, letters of credit, security deposits, tax deposits, performance deposits, escrow deposits, keys, books, records, ledgers, accounts payable and accounts receivable records, leases, rent rolls, reports,

insurance policies and certificates, executory contracts, plans, specifications, drawings, surveys, operating procedures, warranties, records required to be kept under applicable safety and environmental laws, licenses, permits, proffers, entitlements, trademarks, service marks, trade names, intellectual property rights, claims, causes of action, choses in action and in general all other instruments, documents, rights, properties or assets of any kind or character whatsoever (whether tangible or intangible and whether real, personal or mixed) forming a part of or related to the ownership, development, use, operation and management of the Receivership Property (collectively, together with all rents, revenues or proceeds received by the Receiver at any time from or by virtue of the Receivership Property, the "<u>Receivership Assets</u>"), until such time as this Court orders otherwise;

E.  Defendants and their agents, servants, employees, and all other persons acting in concert with them, are restrained and enjoined from (i) withdrawing, paying, or otherwise transferring funds derived from the Receivership Property, except to the Receiver; (ii) removing, disposing of, destroying, concealing, changing, or altering the Receivership Property; (iii) removing, disposing of, destroying, concealing, changing, or altering business records relating to the Receivership Property; (iv) taking any action related to the Receivership Property without the express consent and permission of the Receiver; and (v) collecting any rents, revenues, proceeds or other sums payable with respect to the Receivership Property. Should Defendants come into possession of any such rents, revenues, proceeds or other sums following entry of this Order, Defendants must promptly remit the same to the Receiver in the form received;

F.  All tenants, bailees or other persons in possession of the Receivership Property, and current tenants of the Receivership Property, are hereby directed to attorn to the Receiver, and until further order of this Court: (i) are directed to pay over to the Receiver or its duly designated agent all rents, revenues, proceeds or other sums payable with respect to the Receivership Property which are now due and unpaid or hereafter become due, and (ii) are enjoined and restrained from paying to Defendants, or their agents, officers, directors, employees, or attorneys any such rents, revenues, proceeds or other sums;

G.  The Receiver shall take immediate possession of, hold, secure, take charge of, preserve and protect the Receivership Property and the Receivership Assets;

H.  Funds received by the Receiver or its designee that are attributable to or relate to the Receivership Property must be held in bank accounts in the name of the Receiver or its designee, and therefore the Receiver is authorized to open and maintain bank and trade accounts relating to the Receivership Property, so that all such accounts are in the name of the Receiver or its designee;

I.  The Receiver is further authorized to receive and take charge of any receivables, actions and choses in action, and all other property of any kind and every kind, character and description used in connection with the operation of the Receivership Property and reduce the same to possession and to collect all outstanding accounts, receivables, leases, rents, actions and choses in action, or other evidence of indebtedness, and may bring suit to recover the same in its own name;

J.  The Receiver is authorized to be named as an additional insured on any insurance policies covering the Receivership Property. The Receiver may, in its discretion, obtain additional insurance covering the Receivership Property, and such insurance expense shall be deemed a normal, ordinary, and necessary operating expense of the Receivership Property;

K.  The Receiver shall manage, control, and operate the Receivership Property and collect and use income, earnings, rents and profits generated by the Receivership Property for the purpose of facilitating the Receiver's duties and to generally take any action which could lawfully be taken by the Defendants to fulfill the Receiver's duties, including but not limited to, negotiating new or existing leases and access and control over the Lockbox and Deposit Account;

L.  Any and all funding by Wells Fargo shall only be made pursuant to a budget agreed upon by Wells Fargo and the Receiver;

M.  The Receiver is authorized to employ and pay property managers, accountants, and any other persons and professionals, including attorneys, as the Receiver deems appropriate to perform its duties;

N.  Without limiting the foregoing, the Receiver is hereby authorized to use its personnel or hire on a contract basis, personnel necessary to manage, maintain and preserve the Receivership Property, to retain, hire and terminate other personnel, and contract for and obtain such services, utilities, supplies, equipment and goods as are reasonably necessary to operate, preserve and protect the Receivership Property or to liquidate the Receivership Property, all as the Receiver may reasonably deem necessary;

O.  The Receiver shall prepare monthly financial reports due at the end of each calendar month, beginning in March 2014, regarding the value, profitability, operations, and expenses of the Receivership Property. Such reports shall include, but are not limited to, a current rent roll, all cash receipts, cash disbursements, accounts receivable and accounts payable for the preceding calendar month, and copies of leases entered into with tenants for the preceding calendar month;

P.  The Receiver shall deliver such monthly reports to Wells Fargo and Defendants, along with any other additional or relevant information obtained from time to time by the Receiver in connection with the Receivership Property, within three (3) calendar days from completion of such report;

Q.  The Receiver shall pay the normal, ordinary, and necessary operating expenses of the Receivership Property from the rents and other revenues collected from the Receivership Property; and in the event that the rents and other revenues collected from the Receivership Property are insufficient to pay the normal, ordinary, and necessary operating expenses of Receivership Property, including but not limited to the Receiver's fees, attorney's fees, costs and agents' compensation, the Receiver is hereby authorized to borrow from Wells Fargo or its affiliates, and they are hereby authorized, but are not obligated to, advance to the Receiver such funds as may be necessary to pay such costs

and expenses (the "Receivership Advance"). The Receivership Advance shall be added to the outstanding indebtedness owing to Wells Fargo by Defendants, shall bear interest at the rate of 5.5% (the fixed per annum rate of interest specified in the Loan Modification Agreement dated March 1, 2013, and found at Exhibit F to document 3-2), and continue to be secured by a fully perfected lien on the Receivership Property in favor of Wells Fargo to the same extent, validity, and priority as Wells Fargo holds via the Mortgage and the other Loan Documents without further action by Wells Fargo. No personal recourse shall be had against the Receiver with respect to the Receivership Advance, and Wells Fargo shall look to the Receivership Property and its rights and remedies under the Loan Documents to satisfy the Receivership Advance;

R. The Receiver shall pay to Plaintiff on or before the 15th day of each month all receipts remaining, if any, after payment of the just and reasonable expenses of the Receiver to be applied to the indebtedness of Defendants to Wells Fargo, pursuant to the Mortgage and other Loan Documents;

S. Neither the Receiver nor Plaintiff shall be liable for any expenses incurred with regard to the Receivership Property prior to the Receiver taking possession of same, nor shall the Receiver or Plaintiff be required to use the Receivership Property for payment of any expenses incurred with regard to the Receivership Property prior to the date of this Order. Notwithstanding the foregoing, the Receiver may pay those expenses which were incurred in the normal and ordinary course of business of Defendants prior to the Receiver taking possession of the Receivership Assets if the Receiver determines that payment of any such pre-existing expense is in furtherance of the ongoing operation, maintenance, management, protection and/or preservation of the Receivership Property;

T. The Receiver shall be entitled to payment of a rate pursuant to the following fee structure:

- $225 per hour for Keith G. Hyatt; $200 per hour for senior consultants; and $85 per hour for administrative personnel; and

- Reimbursement for all reasonable out-of-pocket expenses, including travel expenses, reasonably incurred in the discharge of the Receiver's rights and duties as receiver.

U. The Receiver shall not be required to give bond conditioned for the faithful discharge of its duties unless and until cause therefore is shown. The Receiver shall however, remain insured during the term of this receivership under its existing insurance policies;

V. The Receiver is authorized to notify any parties obligated on any of the accounts of the Defendants to make payment directly to the Receiver of any amounts due or to become due thereunder;

W. The Receiver shall take reasonable actions to ensure that it complies with all laws applicable to the operation of the Receivership Property as provided under any laws of the United States, the State of Alabama, and otherwise;

X. The Receiver shall be entitled to the full use and benefit of any surety bonds, letters of credit, cash deposits or similar existing arrangements securing any obligation owing by Defendants to any third party in connection with the Receivership Property;

Y. Without limiting the foregoing, Receiver is vested with all of the powers, rights and duties provided under applicable law and the following specific powers and rights all of which must comply with the terms herein: undertake construction, repairs or alterations of the Receivership Property, with such changes, additions or modifications as the Receiver may deem appropriate or desirable; conduct, terminate, or continue, a marketing or leasing program with respect to all or a portion of the Receivership Property; employ a marketing or leasing agent to do so, directed to the leasing or sale of all or portions of the Receivership Property under such terms and conditions as the Receiver may deem appropriate or desirable; **subject to Court approval**, conduct a receiver's sale of all or a portion of the Receivership Property, free and clear of liens, claims and other encumbrances; employ such contractors, subcontractors, materialmen, architects, engineers, consultants, managers, brokers, or other employees, agents, independent contractors or professionals, as the Receiver may deem appropriate or desirable to implement and effectuate the rights and powers herein granted, and deeming the expenses of the same as an ordinary expense of the receivership; execute and deliver such documents and instruments as are necessary or appropriate to consummate authorized transactions on behalf of Defendants as its attorney-in-fact; enter into such leases, or modify the terms of existing leases, whether of real or personal property, under such terms and conditions as the Receiver may deem appropriate or desirable; enter into tenancy agreements, under such terms and conditions as the Receiver may deem appropriate or desirable; eject tenants or repossess personal or real property, as provided by law, for breaches of leases or other agreements; sue for unpaid rents and profits, payments, income or proceeds in the name of Defendants; maintain actions in forcible entry and detainer, ejectment for possession and actions in distress for rent; compromise or give acquittance for rents and profits, payments, income or proceeds that may become due; and do any lawful acts reasonably requested by Plaintiff to protect the security hereof and use such measures, legal or equitable, reasonably requested by Plaintiff to implement and effectuate the provisions of the Mortgage or the loan documents;

Z. Except by leave of this Court and except with respect to Plaintiff's right to foreclose its Mortgage, during the pendency of the receivership, Defendants, and all other persons, creditors and entities are stayed from taking any action to establish or enforce any claim, right or interest for, against, on behalf of, in, or in the name of the Receiver, the Receivership Property or any other Receivership Assets, or the Receiver's duly authorized agent acting in their capacities as such, including but not limited to, the following actions: (i) commencing, prosecuting, litigating or enforcing suit, except that the actions may be filed to toll any applicable statute of limitations; (ii) accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, property of defendants that relates in any way to the Receivership Property, or attempting to foreclose, forfeit, alter or terminate any of defendants' interest in the Receivership Property, whether such acts are part of a judicial proceeding or otherwise; (iii) using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin,

execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon the Receivership Property; and (iv) doing any act or thing to interfere with the Receiver taking control, possession or management of the property subject to the receivership, or to in any way interfere with the Receiver or the duties of the Receiver, or to interfere with the Receivership Property;

AA. No funds due or held by the Receiver shall be subject to any garnishment, levy, execution or similar action of any kind, whether such are earned before or after entry of this Order;

BB. The Receiver shall have no obligation to file tax returns on the Defendants' behalf in accordance with the Internal Revenue Code or otherwise;

CC. The Receiver may, but is not required to, pay any past due taxes assessed on any of the Receivership Property, as is necessary to redeem the Receivership Property or prevent it from being sold at tax sales;

DD. Plaintiff's interest in the rents, issues, profits, and revenues of the Receivership Property shall not be impaired by the appointment of the Receiver;

EE. This Order shall not affect Plaintiff's Mortgage lien upon and security interest in the Receivership Property and the other collateral, or its right to enforce the terms of the Mortgage and the other loan documents executed in connection therewith against Defendants or the Receivership Property. Nothing in this order shall preclude Plaintiff from proceeding with any and all other remedies available under the loan documents or applicable law;

FF. The Receiver may, in its sole and absolute discretion, resign its office as Receiver by providing at least thirty (30) days written notice to Plaintiff and Defendants, and by filing such notice with this Court;

GG. The Receiver and/or Plaintiff may cause a copy of this Order to be recorded in the Office of the Judge of Probate for Escambia County and/or Marshall County, Alabama and in all such other filing offices within or without the State of Alabama as the Receiver and/or Plaintiff may deem necessary or advantageous;

HH. Any action that is due under this Order on a day that is a weekend or a federal legal holiday shall not be due until the next business day; and

II. The Court shall retain jurisdiction of the specific matters addressed in this Order. The Receiver (or any party) may seek clarification or modification of this Order upon notice to all other parties; provided, however, that Defendants will not be heard to object to particular provisions of this Order by raising arguments available to them prior to entry of this Order, but that they elected not to present at that time. Notwithstanding the foregoing, Defendants remain free to litigate the merits of this lawsuit, including the breach of contract and receivership causes of action therein, and nothing herein can or should be construed as a final adjudication on the merits by this Court of any party's rights, remedies or liabilities vis a vis the subject Loan, Mortgage and Property.

DONE and ORDERED this 18th day of February, 2014.

                                                     s/ WILLIAM H. STEELE
                                                     CHIEF UNITED STATES DISTRICT JUDGE